UNITED STATES *v.* FRANK P. DOW CO., INC. (No. 4322)[1]

---

[1] C. A. D. 169.

United States Court of Customs and Patent Appeals, May 5, 1941

*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard E. Fitz-Gibbon*, special attorney, of counsel), for the United States.
*Lawrence & Tuttle* for appellee.

[Oral argument February 5, 1941, by Mr. Lawrence; submitted on the record by appellee]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and JACKSON, Associate Judges [2]

BLAND, Judge, delivered the opinion of the court:

The sole issue involved in this appeal is whether certain rollers, which will be more particularly described hereinafter, are parts of "all other machines" and therefore dutiable at 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930, or whether they are parts of "paper-box machinery" and therefore dutiable at but 25 per centum ad valorem under said paragraph.

The rollers, as imported, come in sets, there being two rollers to a set. The instant importation consists of two sets of the rollers. The sole witness in the case, testifying for the importer, stated that one set was then in use and the other was for replacement purposes. The rollers were not introduced in evidence but the witness described them as being made of corrugated steel, cylindrical in form, about 8 inches in diameter and about 68 inches long, and that the corrugations or ridges run "the length of the roll."

The involved rollers were imported for the account of Western Container, Inc., of Seattle, Wash. The superintendent of the company, M. H. Munce, testified that his company was engaged in making corrugated fiber boxes or corrugated shipping containers. It appears from the record that the machine in which the involved rollers are for use corrugates a piece of pasteboard or paper as it passes between the rollers and in one instance pastes a piece of paper on one surface of the corrugated paper and in another instance pastes a piece on each side of the corrugated sheet. The smooth paper pasted on is called a liner. Where the corrugated sheet is lined only on one side the merchandise is used for making corrugated wrappers, and where liners are pasted on both sides of the corrugated sheet the material is made into paper boxes by another machine. The single-lined article is not used for making boxes and constitutes only 2 per centum of the product of the machine. The evidence of the witness, though somewhat indefinite, establishes that 98 per centum of the product of the machine of which the imported rollers are a part goes into the making of corrugated paper containers.

---

[2] LENROOT, Judge, took no part in the consideration or decision of this case.

The Collector of Customs at the port of Seattle classified the imported merchandise for duty under the provision for parts of "all other machines, finished or unfinished" and assessed duty at 27½ per centum and in the answer to the protest it is stated that the merchandise was returned for duty as "parts of a machine for the manufacture of corrugated paper." The importer protested said action of the collector and claimed, *inter alia*, that the merchandise was dutiable at 25 per centum ad valorem under the same paragraph as parts of paper-box machinery.

Paragraph 372 reads as follows:

PAR. 372. Reciprocating steam engines and steam locomotives, 15 per centum ad valorem; sewing machines, not specially provided for, valued at not more than $75 each, 15 per centum ad valorem; valued at more than $75 each, 30 per centum ad valorem; steam turbines, 20 per centum ad valorem; cash registers, 25 per centum ad valorem; printing machinery (except for textiles), bookbinding machinery, and *paper-box machinery, 25 per centum ad valorem;* lawn mowers and machine tools, 30 per centum ad valorem; embroidery machines, including shuttles for sewing and embroidery machines, lace-making machines, machines for making lace curtains, nets and nettings, 30 per centum ad valorem; knitting, braiding, lace braiding, and insulating machines, and all other similar textile machinery, finished or unfinished, not specially provided for, 40 per centum ad valorem; all other textile machinery, finished or unfinished, not specially provided for, 40 per centum ad valorem; cream separators valued at more than $50 each, and other centrifugal machines for the separation of liquids or liquids and solids, not specially provided for, 25 per centum ad valorem; combined adding and type-writing machines, 30 per centum ad valorem; apparatus for the generation of acetylene gas from calcium carbide, 20 per centum ad valorem; machines for cutting or hobbing gears, 40 per centum ad valorem; punches, shears, and bar cutters, intended for use in fabricating structural or other rolled iron or steel shapes, 40 per centum ad valorem; *all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem:* Provided, That *parts,* not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: *Provided further,* That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal. [Italics except last two words ours.]

The United States Customs Court, Second Division, after reviewing the evidence, found the following facts:

1. That the corrugated rollers constituting the imported merchandise at bar are parts of a machine which corrugates paper and glues the same to so-called liners.

2. That if the liner is glued to one side of the corrugated paper the resulting product is used for wrapping merchandise.

3. That if the machine continues its operation and attaches a liner to both sides of the corrugated paper, the resulting product is exclusively used for the making of paper boxes by other machines adapted for that purpose.

4. That, of the entire output of the machines of which the imported rollers constitute parts, 98 per centum of the product is used in making paper boxes and 2 per centum for wrapping purposes.

Upon these facts the trial court found, as a matter of law, that the rollers in question were parts of paper-box machinery and therefore

it sustained the importer's protest, basing its decision upon the premise that while "the rollers in question are not parts of a machine which itself makes paper boxes, nevertheless the machine of which the imported rollers are parts is unquestionably part of the machinery used in the manufacture of paper boxes."

From the judgment of the trial court so holding, the Government has appealed to this court and in support of its contention that the involved rollers are not parts of paper-box machinery argues that the machine in which the rollers are used merely prepares a product, corrugated paper, from which paper cartons or boxes are thereafter made and in some instances makes or prepares a product, corrugated paper, from which paper boxes are not made. The case of *United States* v. *Charles Bashwiner, Lunham & Reeve, Inc.*, 28 C. C. P. A. (Customs) 100, C. A. D. 131, is relied upon as being controlling.

In this court there was no brief filed by appellee nor was there any oral argument made in its behalf.

The question was here raised as to whether or not Congress in the use of the word "machinery" in the term "paper-box machinery" meant to use the word with a meaning broader than that attaching ordinarily to the word "machines." While the court below discussed this point only to the extent shown by the above quotation from the opinion in the case, the Government has obliged us with a brief on the question as to whether or not Congress, in enacting paragraph 372, intended to distinguish between the terms "machinery" and "machines."

The question has never been directly ruled upon by this court, although in *United States* v. *J. E. Barnard & Co., Inc.*, 28 C. C. P. A. (Customs) 182, C. A. D. 142, this court held that certain filters were not parts of a machine and stated:

* * * While the combined units may fall within the broad designation of machinery, it must be borne in mind that there is a distinction between "machinery" and "machines," and that paragraph 372, *supra,* while providing for parts of machines does not provide for parts of machinery.

It may be noticed that the court there made the statement that paragraph 372 "while providing for parts of machines does not provide for parts of machinery." The parts provision of the paragraph reads "parts * * * of any of the foregoing." The court did not mean to hold that the statute did not provide for parts of machines which are included in the paragraph under the term "machinery" but did mean to hold that there was no provision for parts of machinery of the machine there involved.

In *Johnson Iron Works, Dry Dock & S. B. Co.* v. *United States*, T. D. 41132, 48 Treas. Dec. 237 (opinion by General Appraiser Fischer), the question as to the scope of the term "machinery" was considered. That case involved the dutiable classification of a screw propeller for a steamship. The Board of General Appraisers (now

the United States Customs Court) held that it was not a part of a machine, although it might be properly regarded as "a part of the operating machinery of the vessel," but that it did not constitute a part of a turbine engine.

We have before us the question as to whether or not Congress meant to use the term "paper-box machinery" in a sense broad enough to include parts of machines which are not integral parts of paper-box making machines, but which machines are used in a paper-box factory for the purpose of making corrugated paper which eventually finds its way into the boxes.

We do not feel called upon here to pass on the question as to whether or not Congress, by the use of the term "machinery" in every instance in said paragraph 372, intended the term to be used in a broader sense than that which refers to machines collectively. We prefer to leave the question open as to whether or not Congress, in using the term "machinery," might have intended to include certain appurtenances in a paper-box factory or other place where the machinery referred to in the paragraph is a necessary instrumentality for the completion of the finished article, even though such appurtenances are technically not parts of "machines" or "machines" themselves. A decision of the issue in this case does not require that we pass upon that question.

We think that in the instant case it cannot be logically held that the term "paper-box machinery" and the parts provision cover parts of a machine which merely prepares material used in the manner described. To hold otherwise, we think, would lead to confusion. In the second clause following the term "paper-box machinery" in the paragraph under consideration, we find the following:

embroidery machines, including shuttles for sewing and embroidery machines, lace-making machines, machines for making lace curtains, nets and nettings * * * knitting, braiding, lace braiding, and insulating machines, and all other similar textile *machinery* * * * [Italics ours.]

Note the phrase "all other similar textile machinery." Obviously, the term "all other similar textile machinery" includes machines similar to the ones named and the word "machinery" there means nothing more than "machines." Furthermore, the next provision provides for "all other textile machinery." Is it possible that in the last two quoted provisions Congress intended to provide for machinery which would not respond to the definition of a machine? We think not.

We hold, therefore, that the term "paper-box machinery" means machinery used principally in the making of paper boxes. The rollers in controversy are not parts of paper-box machinery but are parts of a machine used to make material, most of which, according to the testimony submitted by the importer, is chiefly used by one American

firm to make paper boxes. The mere fact that in the instance at bar the rollers may be used in the same factory where paper boxes are made is a matter of no importance. If the rollers were parts of paper-box machinery, their operation away from a paper-box factory would hardly change the situation. To hold that a machine that makes the components of a paper box is for that reason paper-box machinery would lead us far afield.

We think certain language used by this court in the case of *United States* v. *Harding Co.*, 21 C. C. P. A. (Customs) 307, T. D. 46830, is applicable here. There, a brake lining material was imported in bales in running lengths. From these running lengths, linings for automobile brakes were made. We said:

> * * * But, even if it could be said to be dedicated to the exclusive use of making brake linings for automobiles, it would be, nevertheless, a mere material for such use, just as silk cloth in the piece, designed to be used as linings for clothing, is a mere material out of which such linings are to be cut.

We know of no sound holding that a machine which merely makes the material that later is used by another machine is a part of the latter. The instant importation consists of parts of a machine which makes paper and was properly classified by the collector. *United States* v. *Charles Bashwiner, Lunham & Reeve, Inc., supra.*

From the foregoing it follows that the protest should have been overruled, and the judgment of the trial court is *reversed.*